## Supreme Lodge Knights and Ladies of Honor v. Anderson.

(Decided January 30, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

Insurance, Life—Action Upon Policy—Default in Payment of Dues— Claim of Waiver.—In an action upon a policy of insurance, there being a default in payment of premiums as provided by the policy, there was no merit in the contention that payment as provided in the policy had been waived by the society, because the lodge, or secretary had at times paid the dues for the insured. There is no ground of complaint afforded because the lodge or secretary failed to pay the dues; neither was under any obligation to do so, and the fact that they did neither obligated them to continue to do so, nor to relieve the insured of the obligation to the Supreme Lodge.

CHATTERSON & BLITZ for appellant.

W. L. DOOLAN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The Supreme Lodge Knights and Ladies of Honor is a secret fraternal benefit society, which operates under the lodge system and obtains its members through its subordinate lodges. It is both a charitable and benevolent institution, and maintains a relief fund, created by the assessment of monthly dues upon its members. Out of this fund certain death benefits, provided for in its benefit certificates, are paid. It is operated by, and solely for, the benefit of its members, without profit, and is a mutual organization in which each member in good standing has an interest, and he participates alike in making and executing its laws. The supreme lodge is composed of representatives selected from the subordinate lodges, and the supreme and subordinate lodges each elect their own officers to manage and control its affairs. Each maintains itself by monthly dues, and all are regulated and controlled in the conduct of their business by the constitution and by-laws of the order.

Turner Anderson was a member of Jewel Lodge, one of the branches of this order located at Louisville, and a benefit certificate was issued to him for $1,000, payable at his death to his wife, Sarah Anderson, provided at the time thereof he was a member in good standing, that is, had complied with all the laws, regulations and requirements of the order, which, among other things, included the payment each and every month, without notice or demand, of the sum of $3.05 to the relief fund and dues of twenty-five cents to the subordinate lodge of which he was a member. He died on October 13th, 1908. Proofs of his death were in due time forwarded to the supreme Lodge and demand for payment made. The supreme lodge refused payment upon the ground that, at the time of his death, he had defaulted in his dues and his policy had lapsed. Suit was instituted by Sarah Anderson, the beneficiary named in the benefit certificate, in which she set up the fact of the membership of her husband in the order, the issual to him of the certificate, the payment by him of his dues, his death, notice to the society thereof, demand, and its refusal to pay. The society pleaded that the policy had lapsed because of the non-payment of dues. The plaintiff admitted that the decedent had not paid the September dues and assessment, and that the assessments for July and August had not been paid, but sought to avoid the effect of such delinquency on the part

of her husband by pleading that the custom. and course of dealing between the order and her husband was such as led her husband to believe that prompt payment would not be required of him, and that the order had waived this right.   In an appropriate plea the society denied that its course of dealing with decedent had been such as to induce him to believe that prompt payment of his dues would not be required, denied that it had waived its right to receive same as required by the certificate, and denied that by any act or omission it had forfeited or waived its right to lapse the policy because of such non-payment. On this issue the case was tried out, with the result that plaintiff recovered a verdict for the amount sued for. The society appeals.

Plaintiff knew very little about the transactions between her husband and the society further than that she occasionally saw notices sent to him calling his attention to the fact that his payments were overdue. Her son, her only other witness, testifies that he likewise saw some of these notices which the society sent to his father, and saw checks at different times which his father mailed to the society in payment of his dues.   They were unable to produce any checks showing such payments, and but two notices, one dated January, 1901, and the other September 28, 1908.   The local secretary testifies that for quite a number of years one W. W. Klempt, a member of Jewel Lodge and a patient of Dr. Anderson's, had paid the dues and assessments for decedent regularly each month to the financial secretary, E. C. Byer.   In this way the dues and assessments of decedent were paid until January, 1907, when for some reason he ceased to make such payments.   Thereupon the financial secretary notified Dr. Anderson by letter of such refusal on the part of Klempt to longer pay the dues for him.   The dues were from that date until October, 1908, paid regularly by the decedent himself, but he failed to pay the dues for either October or November, and Jewel Lodge paid these two months' dues for him.   Again, he failed to pay the December dues, for which he was suspended in January, but upon the payment of these dues about the middle of January he was re-instated. A part of the January, 1908, dues were paid by him and the balance by the financial secretary for him.   After that he failed to pay the February and March dues.   These were paid for him by the secretary.   The dues for April, May, June, July. and August were regularly paid by Jewel Lodge for the de-

cedent in order to prevent his being suspended. The monthly report of the supreme lodge for all of this period shows that he was in good standing. In September he failed to pay his dues, and on the 28th thereof the financial secretary notified him by letter that he must pay up by October 4th. As he failed to do so he was suspended on that date. He did not thereafter pay his dues or make application to be reinstated, and at the date of his death he stood suspended.

It appears that Jewel Lodge kept on hand a fund for the very purpose of paying the dues of those of its members who, by reason of misfortune, casualty, or other cause, were unable to meet them promptly, and that the dues of decedent were, for the months indicated, paid out of this fund. But the fund having become exhausted, and the financial secretary, Byer, having paid the dues for decedent himself for more than two months, and being unwilling to make further payments for him, sent the notice of September 28th. This, it appears, was delivered at decedent's office, but, because of his illness, was not delivered to him in person, and was not opened until after his death. Thus the undisputed evidence shows that for as many as seven months, between October, 1908, and his death, his dues were paid by Jewel Lodge for him, and for two and a half months by E. C. Byer, the financial secretary thereof. But there is no evidence whatever that these dues, when so paid to the supreme lodge by Jewel Lodge and the secretary for him, were not paid promptly at the end of each month, as the laws of the order required. The books of the supreme lodge show that these monthly dues on decedent's certificate were regularly received at the end of each month and credited to his account. They show his suspension in January, 1908, the subsequent payment of his dues, application for reinstatement and reinstatement on the 18th of January.

The validity or genuineness of the application for reinstatement is called in question. The proof shows that the name of the decedent was signed thereto by the secretary for him. He testifies that this was authorized by the decedent in a conversation over the telephone; and inasmuch as the purpose of it was to have decedent reinstated and to validate his policy, we fail to see wherein any ground of complaint is afforded by reason of the secretary's having signed the application for decedent. He was benefited by this act and his policy reinstated.

The supreme lodge knew nothing whatever of the manner in which the application for reinstatement was executed. But twice during the history of the life of this certificate sued on was there any default in the payment of dues, according to the books of the supreme lodge—once in December, 1907, for which he was suspended in January, 1908, and later reinstated, as above set out; and again in September, 1908, when he was suspended and not reinstated. The decedent upon only these two occasions in the ten or fifteen years that he was a member of the order failed to pay or have paid for him promptly his dues and assessments to the local financial secretary; and with equal regularity his assessments were forwarded to the supreme lodge.

There is absolutely no proof supporting the claim that Doctor Anderson was granted any indulgence by the supreme lodge. His dues were not permitted to go unpaid. There was no requirement of the order that he should pay them in person, but simply that they should be paid, and it is immaterial, for the purposes of this case, who paid them, or what induced those to pay them who did so. As the supreme lodge never permitted the dues to go unpaid without suspending decedent, no ground is presented to support the claim that the provisions of the certificate or policy were waived. It is argued that on several occasions Jewel Lodge paid the dues for the doctor. True, but this is no indulgence so far as the supreme lodge is concerned. This was either an act of charity, pure and simple, on the part of Jewel Lodge, in case he could not repay the money, or else of kindness, if it was repaid; and the case is not different from what it would have been if these dues had been paid by any friend of his who did not want to see decedent suspended and his certificate lapsed, and on this account paid the dues for him. The notices which were sent out by the financial secretary, which are relied on, do not conflict with the secretary's testimony or the books of the supreme lodge, but rather confirm them. These notices referred to the indebtedness of the doctor to the local lodge for money which it had advanced for him. As a member of the local lodge he is charged with knowledge of its rules, by-laws and regulations. He knew of the maintenance of this fund by the local lodge to pay the assessments due to the supreme lodge by unfortunate members, and, as a member of Jewel Lodge, he also knew that this fund was limited, and, when exhausted,

the local lodge was powerless to longer keep alive his certificate for him. And if, with this knowledge, he permitted his assessments to go unpaid, the fault was his, and not that of either the local lodge or the supreme lodge. A different question would be presented if the dues had been permitted to go unpaid. Whether Doctor Anderson or some one for him paid his dues is immaterial, for when they were paid the requirements of the supreme lodge were satisfied. No indulgence was granted, and no act of either the local or the supreme lodge shown which could by any possibility be considered as operating as a waiver of that provision of the certificate requiring the prompt payment of dues under penalty of suspension. No ground of complaint is afforded because the local secretary, as his friend, or the local lodge, in the dispensation of its charity, failed to continue to pay his dues for him. Neither was under any obligation to do so, and the fact that they did neither obligated them to continue to do so nor in the slightest relieve the doctor of his obligation to the supreme lodge to pay promptly his assessments at the end of each month.

There is no merit in the defense, as developed by the evidence, and the motion for a peremptory should have been sustained.

Judgment reversed and cause remanded, with directions for further proceedings consistent herewith.